# OCTOBER TERM, 1917.[*]

MARYLAND CASUALTY CO. *v.* SCHEURMAN.

PRINCIPAL AND SURETY—LIMITED PARTNERSHIPS—LIABILITY OF IN-
DIVIDUAL MEMBERS—JUDGMENTS—ESTOPPEL.

> Where the individual members of a partnership association,
> limited, give a bond for the construction of a Federal build-
> ing to the United States signed by them individually as
> principals and, after the filing of demurrers by all such
> individual members and a plea by the corporate surety
> setting up the defense that the bond was the obligation of
> the association and not of the individual defendants, in an
> action by the United States against them for the use of
> unpaid laborers and materialmen, a judgment is rendered
> in favor of the use plaintiff and the judgment paid by the
> surety, the individual members are estopped by such
> judgment to object, in an action by the surety against
> them for reimbursement, that the bond was the obligation
> of the association and not their individual obligation.

Error to Wayne; Hosmer, J.   Submitted October 5,
1917.   (Docket No. 14.)   Decided December 27, 1917.

Assumpsit by the Maryland Casualty Company
against Ernest W. Scheurman and others for the
amount of a judgment.   Judgment for plaintiff on a
directed verdict.   Defendants bring error.   Affirmed.

*Safford & Shepherd,* for appellants.

*Goodenough & Long* (*Stevens T. Mason,* of counsel),
for appellee.

On July 12, 1909, the four defendants organized a
partnership association, limited, under the provisions
of Act No. 191 of the Public Acts of 1877 and amend-
atory acts (2 Comp. Laws 1915, § 7950 *et seq.*) ; the

*Continued from Vol. 198.

title of said association being "Interstate Construction Company, Limited." On September 2, 1911, said Interstate Construction Company, Limited, made a proposal in writing to the supervising architect of the treasury department of the United States of America, for the enlargement and completion of the United States Post Office at Gadsden, Ala. On September 21, 1911, the treasury department of the United States of America communicated to said Interstate Construction Company, Limited, its acceptance, in writing, of said proposal, and on September 25, 1911, a formal contract was entered into between the United States of America, acting through J. F. Curtis, assistant secretary, by direction of the secretary of the treasury and said Interstate Construction Company, Limited. A bond having been required by the United States conditioned upon proper performance of said contract by the contractor and the payment of all sub-contractors, application was made by said Interstate Construction Company, Limited, to plaintiff, Maryland Casualty Company, for said bond. After negotiation, the bond was executed in the following form:

"Know all men by these presents, that we, Ernest W. Scheurman, Fred T. Scheurman, Louis O. Scheurman and Gustav. F. Scheurman, partners doing business under the firm name of the Interstate Construction Co., Limited, of the city of Saginaw, West Side, county of Saginaw, and State of Michigan, principals, and Maryland Casualty Company, a corporation existing under the laws of the State of Maryland, of the city of Baltimore and State of Maryland, surety, are held and firmly bound unto the United States of America in the sum of forty-two thousand dollars ($42,000) lawful money of the United States, for the payment of which, well and truly to be made to the United States, we bind ourselves, our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by these presents:

"Sealed with our seals and dated this 1st day of November, A. D. 1911.

"The condition of the above obligation is such, that whereas the said Interstate Construction Company, Limited, has entered into a certain contract, hereto attached, with the United States, bearing date the 25th day of September, A. D. 1911: Now, if the said Interstate Construction Company, Limited, shall well and truly fulfill all the covenants and conditions of said contract, and shall perform all the undertakings therein stipulated by it to be performed, and shall well and truly comply with and fulfill the conditions of and perform all of the work and furnish all the labor and materials required by any and all changes in, or additions to, or omissions from said contract which may hereafter be 'made, and shall perform all the undertakings stipulated by it to be performed in any and all such changes in, or additions thereto, notice thereof to the said surety being hereby waived, and shall promptly make payment to all persons supplying labor or materials in the prosecution of the work contemplated by said contract, then this obligation to be void; otherwise to remain in full force and virtue.

"In testimony whereof, the said Ernest W. Scheurman, Fred T. Scheurman, Louis O. Scheurman and Gustav F. Scheurman, principals, and Maryland Casualty Company, surety, have hereunto subscribed their names and affixed their seals the day first above written.

"ERNEST W. SCHEURMAN.     [Seal]
"F. T. SCHEURMAN.     [Seal]
"LOUIS O. SCHEURMAN.     [Seal]
"G. F. SCHEURMAN.     [Seal]
"MARYLAND CASUALTY COMPANY,
     "By JAS. H. STONE,
          "Vice President.     [Seal]
"Attest:  ROBERT FERGUSON, Asst. Secretary.
"Signed, sealed, and delivered in presence of RAY A. KAIN, FRANCES BULGER, C. H. PORTER, as to G. F. S., C. J. ORLAND."

The Interstate Construction Company entered upon the performance of said contract and later made default in payment to certain persons and corporations who had furnished labor and materials for the erection of said post office building.  On June 9, 1914, a

suit was commenced in the district court of the United States of America for the middle division of the northern district of Alabama by the United States, suing for the use and benefit of the unpaid subcontractors, against plaintiff and the four defendants as individuals. To this suit plaintiff herein filed a special plea setting out:

"That the bond sued on was not executed by said Interstate Construction Company, Limited, as the principal obligor thereof, the said Interstate Construction Company, Limited, having failed to execute said bond, but it was executed by Ernest W. Scheurman, Fred T. Scheurman, Louis O. Scheurman and Gustav F. Scheurman, as the principal obligors thereof, instead of said Interstate Construction Company, Limited, and the said Interstate Construction Company, Limited, has not been made a party defendant in this suit. Wherefore, this defendant says that this suit should be dismissed from this court for want of jurisdiction and prays the judgment of this court in dismissing the same."

The individual defendants herein filed various demurrers to the action in the Federal court for Alabama, but ultimately a judgment by consent was rendered in said court in favor of the use plaintiff and against all defendants in the sum of $5,601.86. This judgment was paid by the Maryland Casualty Company as surety upon said bond, and the action at bar was instituted by said surety to recover from the individual principals upon said bond the amount so paid. The case came on for trial in the circuit court before a jury. Plaintiff introduced the judgment of the Alabama Federal court and proved that it had paid said judgment and rested. Thereupon defendants introduced the testimony of Gustav F. Scheurman, who testified that he had no personal individual interest in the subject-matter of the contract between the Interstate Construction Company, Limited, and the United

States, except as a member of said copartnership, limited. He further testified that:

"The signing of the bond in the manner in which it was signed was done by the express request of the government officials."

Objection was made on behalf of the defendants to the admission in evidence of the transcript of the judgment upon the ground:

"That the bond upon which the proceeding was based was not the bond of the defendants in this case as individuals. It was in truth and in fact the bond of the Interstate Construction Company, Limited, a partnership association as disclosed by all of the documents in connection with the execution construed together."

Counsel for defendants further asserted:

"We maintain that they took a judgment against the wrong parties then, but we are not concerned in that so far as this case is concerned."

A motion for a directed verdict on behalf of defendants was made and denied, and the court proceeded to direct a verdict in favor of the plaintiff for the amount it had paid upon the judgment together with interest, $5,951.03.

BROOKE, J. (*after stating the facts*). A motion for new trial thereafter was made based upon two grounds:

(1) That the court erred in refusing to direct a verdict for the defendants.
(2) Because the court erred in directing a verdict for plaintiff.

In this court there are seven assignments of error, all of which involve the propriety of the action of the court in directing a verdict for the plaintiff and which may be considered together. If we understand the po-

sition of appellants in this court, it may be stated briefly as follows: That, considering the correspondence between the Interstate Construction Company, Limited, the partnership association, with the government with reference to the contract, and with the plaintiff with reference to the bond, and the contract itself between the partnership association limited and the government, the bond attached to the contract and here in question is the obligation of the partnership association as principal, and plaintiff company as surety, and is not the bond of the four defendants herein as individuals. It is further asserted that plaintiff, having contracted with defendants in their corporate capacity and having accepted premiums from the Interstate Construction Company, Limited, for the execution of said bond, is estopped from now claiming that the bond in question is the bond of the individual members of the partnership association. We are unable to agree with the contention of defendants' counsel. The obligation sued upon is not ambiguous. It names as principals the four defendants herein and binds, not only them, but their heirs, executors, administrators, successors, and assigns, jointly and severally. It is executed by said four defendants in their individual capacity and without any reference whatever to the Interstate Construction Company, Limited, whose contract with the government was guaranteed by said bond. When default had been made by the Interstate Construction Company, Limited, the copartnership association, under its contract with the government, the government brought suit against the four defendants herein as individuals and as principals in said bond, and against the plaintiff as surety thereon. To said suit defendants interposed various demurrers, which, however, were finally withdrawn or abandoned, and a judgment by consent was rendered against them as principals and against

the plaintiff as surety, for the amount of the unpaid claims against the Interstate Construction Company, Limited.

We are of opinion that defendants are bound by the judgment of the Alabama Federal court, and that they are now estopped from again litigating with their codefendant, the plaintiff, the question settled by that judgment. They assert that estoppel under the judgment is raised only between those who are adverse parties in the former suit, and not as between codefendants *inter sese,* citing 23 Cyc. pp. 1279, 1280. The rule announced in the text is not without exception, and the cases cited in support thereof include none wherein, of two defendants, one is a surety and the other a principal, as in the case at bar. It seems plain that, when defendants admitted their liability in the suit against them as individuals in the Alabama court and consented to judgment going against them in that capacity, plaintiff, their surety, was obliged to admit its liability as such. Again, it is fundamental that the party who is secondarily liable (the surety), when he has paid the claim, succeeds to all the securities and benefits held by the obligee against the principal debtor. If the surety discharges the obligation of the principal, he thus stands in the shoes of the obligee and may enforce any remedy which the obligee may enforce against the principal. Suppose plaintiff had not paid the judgment and suit had been begun upon said judgment either by the United States or by any of the use plaintiffs for whom said suit was brought, defendants could scarcely have interposed the defenses now relied upon. Plaintiff, having paid said judgment, is now subrogated to the rights of the obligee and is entitled to the same protection as would be the parties to whom it paid the judgment. The fact that the parties were codefendants and made the same defenses to the claim against them is of no conse-

quence, when once judgment has passed against them in different capacities. Where one is entitled either to reimbursement or contribution from the other in a collateral proceeding, they cannot again question their joint liability to the original plaintiff. This principle finds ample support in the following text-books and authorities: 1 Freeman on Judgments (4th Ed.), § 158; 2 Black on Judgments (2d Ed.), § 599; *Lloyd* v. *Barr*, 11 Pa. 41; *United States Fidelity & Guaranty Co.* v. *Haggart*, 163 Fed. 801 (91 C. C. A. 289); *Osage City Bank* v. *Jones*, 51 Kan. 379 (32 Pac. 1096).

Judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.