STATE OF CONNECTICUT *v.* THE BLOOMFIELD
CONSTRUCTION COMPANY, INC., ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

350

Argued December 7, 1939—decided February 7, 1940.

*Frank Covello,* for the appellant (named defendant).

*Edward D. McGee,* with whom was *William H. Tribou,* and, on the brief, *Edward I. Taylor,* for the appellant (defendant The Century Indemnity Company).

*Cyril Coleman,* for the appellee (plaintiff).

JENNINGS, J. The real party plaintiff in interest in this case was the Aetna Life Insurance Company which had paid a judgment rendered against the nominal plaintiff in favor of Duane H. Clement on account of an injury due to a defective highway under the control of the highway commissioner. The insurance company claimed to be subrogated to the rights of the state. The suit was predicated on the terms of a contract entered into by the named defendant, the Century Indemnity Company, the other defendant being surety on the construction bond. The defendants attack the finding and the conclusions based thereon.

The evidence was printed but the finding cannot be corrected in any way material to this appeal. On November 21, 1933, the Bloomfield Construction Company entered into a contract with the state highway commissioner to repair a road in Simsbury. The Standard Specifications for Road and Bridge Construction were incorporated therein by reference. On that day the Bloomfield Construction Company as principal and the Century Indemnity Company as surety executed a bond in favor of the state of Connecticut which included in its terms the contract and the Standard Specifications. Work under the contract was commenced shortly after its date and proceeded until January 14, 1936, when, because of inclement weather, it was temporarily suspended. It was resumed in the spring and completed and accepted on behalf of the state on May 12, 1936. At that time written certifi-

cates that the work had been completed satisfactorily were delivered to the defendants.

On February 11, 1936, Clement, a traveler on the highway, was injured by reason of a defect existing within the stretch of highway involved in this construction work. He subsequently brought suit against the highway commissioner and the Bloomfield Construction Company which resulted in a judgment for $4000 against the state only, for which it was reimbursed by its liability insurer, the Aetna Life Insurance Company. The Bloomfield Construction Company, in whose favor judgment was rendered, was represented in that action by counsel who were employed by the Century Indemnity Company in pursuance of a liability policy issued by it to the construction company.

When the work was commenced the state erected large eight by eight foot signs at both ends of the project legally closing the road under § 1513 of the General Statutes. This provides that any person who uses a highway under construction, where notices are posted in accordance with its terms, does so at his own risk. The construction company was required, under the provisions of the Standard Specifications, to maintain and light these signs and it did light them with lanterns. About a week before the accident the sign at the end of the construction in the direction from which Clement approached had been blown over and covered with snow. Because of this condition—the failure by the construction company to maintain this sign according to its contract—the state was deprived of its defense under the statute, § 1513, in the action brought by Clement.

On these facts the trial court concluded that the defendants were jointly liable under the construction bond, that the judgment in the case of *Clement* v. *MacDonald* was not res adjudicata, that the plaintiff

did not release or waive its present claim nor was it estopped to prosecute its present action, and that the fact that the state was insured against liability, and that it did not tender to the defendants the defense of the original action were immaterial.

The finding that the state was deprived of its defense to this action because the sign closing the road was down was disputed by the defendants but must stand. *Belhumuer* v. *Bristol*, 121 Conn. 475, 479, 185 Atl. 421. There was substantial evidence to support the finding in this case that, not only was it the duty of the construction company to maintain the signs under the terms of its contract but that it did exercise what supervision there was over their maintenance while the work was suspended. Its vice president ordered one of its employees to keep two lights on each sign lit during the night while the work was suspended and the construction company did hang two red lanterns on each sign. Each lantern contained sufficient fuel to burn eight days. The vice president, who was also the superintendent in charge of the job, occasionally checked up on the signs and lights during this period.

Seven special defenses were filed. The first and second raise the issue of res adjudicata and the sixth the closely related defense of estoppel by judgment. The issue in this case is whether the construction company violated its contract by failing to maintain warning signs, thereby depriving the plaintiff of a complete defense to the original action. The trial court found as a fact that the issue of control of the warning signs was not before the court in the original case and concluded that the judgment in that case was not res adjudicata as to the issues here raised. The complete file in the original case is a part of the finding in this case. All the evidence in this case is printed. The

only evidence available in this appeal as to the issues in the original case is contained in the file of that case. That file discloses that the suit was originally brought against MacDonald as highway commissioner alone and the writ was served May 20, 1936. A motion to cite in the construction company was granted January 22, 1937. A substituted complaint was filed January 20, 1938, against both defendants. This alleged that the highway commissioner was under a duty to maintain the strip of road in question, that he failed in this duty in that there was a ditch or depression in the road by reason of which the plaintiff was injured. It was further alleged that the road was being repaired by the construction company under a contract with the highway commissioner and that the defect was caused by the fault of the construction company. Both defendants filed what were in effect general denials and the construction company added a special defense alleging that the highway was legally closed to traffic. The judgment found the issues thus framed against the commissioner and for the construction company.

The special defenses in this suit alleged and the replies admitted that the court found in the original suit that, at the time of the injury to Clement, the commissioner had accepted the contractor's work and had resumed full charge and control of the road and that the injuries to Clement were caused solely by the neglect of the commissioner. To repeat, the original complaint alleged (1) that the defect was due to failure to repair by the commissioner, and (2) was caused by the construction company. The latter was exonerated and the memorandum of decision in the original suit, which we may refer to for this purpose (*Storrs* v. *Robinson*, 77 Conn. 207, 209, 58 Atl. 746), states that the contractor was through, temporarily at

least, with the job and that thereafter the fill settled and the sign fell down.

The real question is whether the finding in the original case that the commissioner had resumed full control of the road includes the issue here that under the contract the signs were to be and in fact were being maintained by the construction company. The foregoing analysis shows that the issue as to the control of the signs was not one which was litigated in the original suit, nor could it have been. If the commissioner had resumed full charge and control of the road and the sign was down, he would be liable no matter whether the duty to maintain that sign rested upon him or upon the construction company and the construction company would not be liable for injuries due to a defect in the roadway even though it were responsible for the sign not being in place. The control of the highway at the time of the accident to Clement was the determining factor in the decision of that case fixing the liability upon the state, and it would have made no difference whether or not the responsibility for maintaining the sign was on the construction company. There are circumstances in which a judgment may create an estoppel as between two defendants to an action. See *Appell* v. *Schneider & Pomerantz Baking Co., Inc.,* 126 Conn. 16, 18, 8 Atl. (2d) 529. However, that estoppel does not include an issue which was not, and could not be, litigated in the preceding action. *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 195, 171 Atl. 429; *Boston & Maine Railroad* v. *Sargent,* 72 N. H. 455, 461, 57 Atl. 688, 690.

The cases of *Flagstaff* v. *Walsh,* 9 Fed. (2d) 590, and *Seattle* v. *Erickson,* 99 Wash. 543, 169 Pac. 985, relied on by the defendants, do not support their contention. In each case the plaintiff, who was injured by a highway defect, sued the town and a contractor

who had been engaged in its improvement; the original action resulted in a judgment holding the town liable but exonerating the contractor, and the opinion went no farther than to hold that the decision in the original action was res adjudicata upon the issue of the liability of the respective parties in an action brought by the town to recover the amount of the judgment from the contractor. It might be—but on this we express no opinion—that if, in the present action, the plaintiff were seeking to hold the construction company as the one directly responsible for the defect in the highway, the judgment in the original action would have constituted an estoppel, but that is not the issue presented in this case.

The third and fourth special defenses allege in effect that the state has suffered no loss because it has been reimbursed by its liability insurer and that the latter, having discharged its primary liability to its insured, cannot recover of the defendants. As before stated, the admissions in the pleadings establish the fact that the suit is being brought by the state for the benefit of its insurer as the real party in interest. The latter claims that the facts found lead irresistibly to the legal conclusion that it is subrogated to the rights of the state and can recover from the defendants for the damages suffered by the state because of the breach of contract by the construction company to maintain the closure signs.

The defendants admit that an insurer indemnifying an insured against loss occasioned by the wrongful act of a third person is ordinarily subrogated to the rights of the insured against the third person on the equitable principle that the ultimate loss should fall on the one who, in good conscience, ought to bear it. *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 238, 193 Atl. 469. They claim in two prin-

cipal and five subsidiary defenses that the one who should in good conscience bear this ultimate loss is the state's insurer. In so doing they lose sight of the factual situation. From the time that these closure signs were erected until they were removed, it was the duty of the construction company to maintain them. As long as they were maintained there was no liability on the commissioner or the construction company for failure to maintain the highway in a reasonably safe condition for public travel. It follows that the failure to maintain the signs changed the character of the highway from a closed to an open road and that that failure enabled Clement to recover from the state in his action. On the defendants' theory of balancing the equities, the plaintiff should prevail. *John Wanamaker, Inc.* v. *Otis Elevator Co.,* 228 N. Y. 192, 126 N. E. 718; *Lord & Taylor, Inc.* v. *Yale & Towne Mfg. Co.,* 230 N. Y. 132, 129 N. E. 346; *Ocean Accident & Guarantee Corp.* v. *Hooker Electrochemical Co.,* 240 N. Y. 37, 47, 147 N. E. 351; *Commercial Casualty Ins. Co.* v. *Capitol City Surety Co.,* 231 N. Y. S. 169, 171, *S. C.,* 231 N. Y. S. 494, 497. The principle of balanced equities is discussed and many of the cases cited by the defendants are analyzed and reviewed in *Martin* v. *Federal Surety Co.,* 58 Fed. (2d) 79. All of the elements justifying subrogation are present in this case and the facts do not permit the application of the principles of law contended for by the defendants.

Under the fifth special defense it is asserted that by assuming the defense of the action of *Clement* v. *MacDonald* instead of tendering it to the construction company, the state became solely liable for the judgment therein. Such a defense is futile when, as here, both parties were sued and both defended. *Detroit* v. *Grant,* 135 Mich. 626, 98 N. W. 405.

The seventh special defense pleads release of the

claim in suit and waiver. This defense is predicated on the delivery to the construction company and its surety of substantially identical papers entitled "Acceptance of Contract" and reading, in part, "All work under the above described contract has been completed in accordance with the plans, specifications and special provisions of the contract, and is recommended for acceptance in fulfilment of the terms of said contract" followed by an acceptance of the work with authorization of final payment, release of the bond and transfer to the maintenance department.

These papers evidence merely the highway commissioner's satisfaction with the work and labor performed under the contract. The wording of the paper with reference to the bond is: "The above described work is hereby accepted and I authorize; . . . (2) the release of the contract bond sixty days after above date in accordance with section 1113b of the . . . General Statutes [Cum. Sup. 1933]." Section 1113b, now Cum. Sup. 1935, § 1594c, refers primarily to security for labor performed and materials furnished. The bond furnished went much further than this and incorporated by reference the contract and Standard Specifications. Under the latter the commissioner reserved the right to require the contractor to make good defects either before or after final payment. They also provided that the contractor should indemnify and save harmless the state and its officers from all suits or claims, authorized the commissioner to retain money due the contractor to meet such claims and further provided that "in case no money is due, his Surety shall be held until such suit or suits . . . shall have been settled." In view of these provisions and this wording the court could reasonably find that the papers in question were not intended to apply to the present cause of action and the defense is not good.

*Blakeslee* v. *Water Commissioners*, 121 Conn. 163, 184, 183 Atl. 887; 3 Elliott, Contracts, § 2061.

As far as waiver is concerned, that is defined as the intentional relinquishment of a known right. *Mishiloff* v. *American Central Ins. Co.*, 102 Conn. 370, 378, 128 Atl. 33. Until judgment was rendered in the Clement suit it was uncertain whether either of the defendants would be held liable. No known right existed which the plaintiff could waive. Furthermore, no act was performed by the plaintiff which in any way prejudiced the position of the defendants. As indicated, the commissioner had the right to withhold payments due the construction company to cover claims, but the defendants could not complain of his failure to withhold payments to cover an unliquidated claim as uncertain as that of Clement, before judgment. He wasted no time in asserting it after judgment was rendered against him. The finding is that there was no waiver and the facts do not establish waiver as a matter of law.

Finally, the defendants assign as error the inclusion of counsel fees for the defense of the Clement suit and the prosecution of this one. It is agreed that the amount ($750) is reasonable. As a general rule attorney's fees are not recoverable as an item of damage unless such recovery is allowed by statute or contract. *Federal Surety Co.* v. *Basin Construction Co.*, 91 Mont. 114, 125, 5 Pac. (2d) 775; 15 C. J. 114. No statute or specific contract provision appears and the general rule applies to any expenses incurred in this case. As far as the expenses incurred in the defense of the Clement suit are concerned, the Aetna Life Insurance Company is here claiming merely by subrogation those rights which the state would have to recover and stands in its shoes. As far as the record discloses, the state did not make any payments or incur any

obligations on account of the defense of the Clement suit and would have no basis of recovery on that account. The insurance company, its subrogee, cannot, therefore, recover them. *John Wanamaker, Inc.* v. *Otis Elevator Co.,* supra, 201. The inclusion of counsel fees in the judgment was error.

There is error; the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff modified by the elimination of the item of $750, allowed as counsel fees.

In this opinion the other judges concurred.